UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                           :

PEOPLE OF THE STATE OF NEW YORK,     :    Case No. _____
by LETITIA JAMES, Attorney General of
the State of New York,

                           Plaintiff,

                             v.

MONEYLION INC., MONEYLION
TECHNOLOGIES INC., and ML PLUS
LLC,

                           Defendants.
--------------------------------------------------------- X

### NOTICE OF REMOVAL BY DEFENDANTS
### MONEYLION INC., MONEYLION TECHNOLOGIES INC., AND ML PLUS LLC

     Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, and on the grounds set forth below, Defendants MoneyLion Inc., MoneyLion Technologies Inc., and ML Plus LLC (collectively, "MoneyLion"), remove the above-captioned case, originally filed in the Supreme Court of the State of New York, New York County under Index No. 451303/2025, to the United States District Court for the Southern District of New York. In support of this Notice of Removal, Defendants state as follows:

### BACKGROUND & PROCEDURAL HISTORY

     1.     MoneyLion is a financial technology company offering a range of products, services, and tools to people who are often underserved by banks and traditional financial institutions. This case focuses on one of MoneyLion's products, Instacash, which is the company's version of earned wage access ("EWA"). Instacash gives consumers early access to money they have already earned—with no obligation to repay. Unlike credit products, Instacash advances are not treated as debt and have no mandatory fees and no interest. MoneyLion clearly discloses that

paying for faster access and tipping are completely voluntary and that the consumer has no obligation to repay the advance or any optional fees or tips. A customer's Instacash eligibility is unaffected if they do not elect expedited-funding delivery or if they do not leave a tip. MoneyLion does not perform a credit check to establish a consumer's Instacash eligibility and does not report any repayment or nonpayment information to credit bureaus. The *only* consequence of not repaying an advance is losing eligibility for future advances. Importantly, no interest can accrue on Instacash advances, and MoneyLion has no right of recourse for repayment because, after a consumer requests an advance, they can cancel payment for the entire advance, including any expedited-funding fees or tips, by removing their payment method in the MoneyLion mobile application or by contacting customer service.

2.  On April 15, 2025, the New York Attorney General served MoneyLion Inc. with a Summons and Complaint, filed in the Supreme Court of the State of New York, New York County, alleging, among other things, that MoneyLion's operation of Instacash violates the federal Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5531 *et seq*. A copy of the Summons and Complaint, other initiating papers simultaneously filed, and Affirmation of Service, are attached as **Exhibit A**.

3.  On April 28, 2025, the Attorney General served a Supplemental Summons and Amended Complaint filed in the action, adding MoneyLion Technologies Inc. and ML Plus LLC as defendants. A copy of the Supplemental Summons and Amended Complaint, other papers simultaneously filed, and Affirmation of Service are attached as **Exhibit B**.

4.  EWA is an emerging product with no settled status under federal financial regulatory regimes. The Office of the New York Attorney General appears to be the first agency, federal or state, to bring actions seeking to apply the CFPA to an EWA product. MoneyLion is

unaware of any judicial decision addressing the application of the CFPA to EWA products. The Consumer Financial Protection Bureau, the federal agency directly responsible for federal consumer financial services regulation, has not yet promulgated any final rules addressing EWA products like Instacash.

## GROUNDS FOR REMOVAL

5. Removal is proper under 28 U.S.C. § 1441(a) because the Amended Complaint alleges claims "arising under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331—*i.e.*, the Court has federal question jurisdiction—and because the Court otherwise has supplemental jurisdiction under 28 U.S.C. § 1367.

6. District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

7. Federal courts routinely exercise federal question jurisdiction where the complaint alleges violations of a federal right for which federal law provides the remedy. *See e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012) (a claim "plainly 'aris[es] under' the 'laws ... of the United States'" where "federal law creates the right of action and provides the rules of decision") (cleaned up); Wright, Miller, Cooper and Freer, 13D Fed. Prac. & Proc. Juris. § 3562 (3d ed.) (in "determining whether a claim arises under federal law … there is little difficulty if federal law provides both the substantive right and a remedy for that right. In those cases jurisdiction is taken as a matter of course.").

8. The Amended Complaint, on its face, alleges claims for which both the substantive right and remedy are provided by federal law. The Sixth and Seventh Causes of Action allege that

3

MoneyLion's offering of Instacash violated the CFPA on two legal and factual theories that the Attorney General claims constitute respectively "deceptive acts and practices" (Am. Compl. (Sixth Cause of Action) ¶¶ 160-166), *see* 12 U.S.C. § 5531(a), and "abusive acts and practices" (Am. Compl. (Seventh Cause of Action) ¶¶ 167-79). *See* 12 U.S.C. § 5531(d). The Amended Complaint also demands remedies under the CFPA, including civil penalties and costs only available under the CFPA. *See* Am. Compl. Demand for Relief ¶¶ a, f, and g (demanding an order and judgment enjoining violations of the CFPA, "imposing appropriate civil money penalties against Defendants as authorized by 12 U.S.C. § 5565(c)," and "awarding costs under. . .12 U.S.C. § 5565(c).") The Court cannot grant the requested relief without deciding the questions presented under the CFPA. And the CFPA also provides the statutory authority for the Attorney General to file a civil action for remedies provided by the CFPA. *See* 12 U.S.C. § 5552(a)(1) (authorizing state Attorneys General "to bring a civil action . . . to enforce provisions of this title or regulations issued under this title, and to secure remedies under provisions of this title or remedies otherwise provided under other law.").

9. That the Attorney General has styled her CFPA claims as based in authority granted her by New York Executive Law § 63(12), rather than the rights expressly granted her by the CFPA, does not change the fundamental jurisdictional facts or outcome. The Amended Complaint's CFPA claims amount to no more than an ordinary state court civil action alleging violations of a federal law and demanding remedies provided only by that federal law. Thus, these claims have all the hallmarks of federal claims at the core of federal question jurisdiction.

10. The same result follows if the Attorney General's CFPA claims are analyzed under the line of cases specifically addressed to "state law" claims. *See Gunn v. Minton,* 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Under *Gunn* and *Grable*, there is federal question jurisdiction over a state law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

11. The Amended Complaint's CFPA claims satisfy all four requirements under *Gunn* and *Grable*.

12. *First*, the federal questions are "necessarily raised" because the CFPA claims are expressly premised on alleged violations of federal law and demand remedies under federal law. *See New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315-16 (2d Cir. 2016) (under *Grable* a claim "affirmatively 'premised' on a violation of federal law" necessarily raises the federal question). As noted above, a court cannot grant the relief requested under the Attorney General's Sixth and Seventh Causes of Action without deciding the CFPA questions. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (holding that claims under N.Y.G.B.L. § 349 necessarily raised a federal question because plaintiff could not "obtain the relief he seeks without prevailing on [the federal question]").

13. *Second*, the federal questions are "actually disputed." They are the "central" and essentially "the only" points in dispute under the Amended Complaint's two CFPA claims. *Gunn*, 568 U.S. at 259; *Grable*, 545 U.S. at 315. The questions to be adjudicated with respect to the CFPA claims turn on the CFPA-related issues raised by the Amended Complaint, including whether Defendants' conduct is "deceptive" or "abusive" under the CFPA and whether the Attorney General can seek civil money penalties under the CFPA.

14. *Third*, the federal questions are "substantial," justifying the exercise of federal jurisdiction. Substantiality turns on a federal interest sufficient to "justify resort to the experience,

5

solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Grable*, 545 U.S. at 312; *see also New York ex rel. Jacobson*, 824 F.3d at 317-18.  Deciding whether the Attorney General is entitled to CFPA remedies against Defendants based on Defendants' description of wage advances as "no interest," or "0% APR," (*see* Am. Compl. ¶¶ 35, 38, 165, 173, and Demand for Relief), will affect industry participants across the country who offer similar no-obligation-to-repay EWA advances without mandatory fees or charges while awaiting specific CFPA guidance from federal regulators.  A growing number of U.S. consumers want alternatives to high-cost credit products, such as payday loans, to solve the mismatch of when they receive compensation for their labor and when they must pay living expenses.  As a result, the Attorney General's demand for CFPA civil penalties under the CFPA potentially affects EWA providers and consumers across the country.  These federal questions are substantial both because they have the capacity to resolve future cases by deciding broadly applicable, fact-insensitive issues of federal law, *see Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006) (a "nearly 'pure issue of law'" is more likely a substantial federal question); *Fracasse v. People's United Bank,* 747 F.3d 141, 145 (2d Cir. 2014) ("[A] question that will control many other cases is more likely to be a substantial federal question."); and because they raise issues of special, federal regulatory concern.  *See Grable*, 545 U.S. at 315 (finding a substantial federal issue in a state action to quiet title because the federal government "has a direct interest in the availability of a federal forum to vindicate its own administrative action" in the validity of service of a tax delinquency notice; and property buyers have an interest in federal court's expertise in tax matters).

15.     *Fourth*, exercising federal question jurisdiction would not disrupt the federal-state balance that Congress approved in the CFPA.  The CFPA expresses no preference for state court adjudication, expressly providing a federal right of action and federal forum for CFPA

enforcement by the states. 12 U.S.C. § 5552(a)(1). As the Second Circuit has observed, under such circumstances, substantial federal issues are often appropriate for resolution in federal court. *New York ex rel. Jacobson*, 824 F.3d at 316 ("Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court."). The limited class of state-initiated actions permitted by the CFPA do not threaten to flood federal courts with litigation. A federal forum serves the federal interest in uniform and consistent application of federal law to parties nationwide. And the appropriateness of exercising federal jurisdiction is reinforced by the fact that the Attorney General commenced this case as an ordinary civil action, rather than availing herself of the special state court proceeding specifically authorized by New York Executive Law § 63(12).

16. The Court has original jurisdiction over the remainder of the case under 28 U.S.C. § 1367. The Amended Complaint's First through Fifth causes of action arise from the same "nucleus of operative facts" as the Sixth and Seventh causes of action and thus are part of the same "case and controversy" under § 1367. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011); *but see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 & n.5 (2d Cir. 2004) (noting that the full scope of § 1367 jurisdiction may reach still further than the test set forth in *Gibbs*).

**PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

17. This Court is the proper venue upon removal because the state court action is pending in the New York Supreme Court, New York County. *See* 28 U.S.C. 1441(a).

18. This Notice of Removal is timely because it is filed within 30 days after service of the Complaint and Summons on the earliest named defendant, MoneyLion Inc., as shown by the

filed Affirmations of Service included in Exhibits A and B.  *See* U.S.C. 1446(b)(1); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

19. Exhibits A and B, described above, include true and correct copies of all process, pleadings, and orders served on Defendants in the state court action.  *See* 28 U.S.C. 1446(a).

20. In accordance with 28 U.S.C. § 1446(d), after filing this Notice of Removal, Defendants will promptly serve written notice of this Notice of Removal on the New York Attorney General's counsel of record and file a copy with the Clerk of the Supreme Court of the State of New York, New York County.

21. Defendants deny the allegations in the Amended Complaint and file this Notice of Removal without waiving any defenses, objections, exceptions, remedies, or obligations that may exist in their favor in either state or federal court.  Defendants reserve the right to amend or supplement this Notice of Removal.  In the event any questions arise as to the propriety of the removal of this action, Defendants expressly request the opportunity to present a brief, oral argument, and/or any further evidence necessary in support of their position that this action is removable.

Dated: New York, New York
       May 15, 2025

COOLEY LLP

By:   /s/James Kim
      James Kim
      Kaitland M. Kennelly

55 Hudson Yards
New York, NY  10001-2157
Phone: (212) 479-6000
Email: jameskim@cooley.com
       kkennelly@cooley.com

*Attorneys for Defendants MoneyLion Inc., MoneyLion Technologies Inc., and ML Plus LLC*

8