# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York,

                Plaintiff,

    - against -

MONEYLION INC., MONEYLION
TECHNOLOGIES INC., and ML PLUS LLC,

              Defendants.

Case No. 25 Civ. 4093

# REPLY MEMORANDUM OF LAW IN SUPPORT
# OF PLAINTIFF'S MOTION TO REMAND

LETITIA JAMES
Attorney General of the
State of New York

Christopher L. Filburn
Senior Enforcement Counsel
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, New York 10005
212.416.8303

*Counsel for Plaintiff*
*People of the State of New York*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.     THE COMPLAINT ASSERTS CLAIMS CREATED BY NEW YORK LAW THAT
       CANNOT BE TRANSFORMED INTO REMOVABLE FEDERAL CLAIMS .............. 1

II.    MONEYLION FAILS TO CARRY ITS BURDEN TO SUSTAIN REMOVAL.............. 5

       A.     The Question of MoneyLion's Liability under the CFPA Does Not Involve a
              Federal Question That is Necessarily Raised, Substantial, and Disputed............... 5

       B.     The OAG's Authority to Seek Penalties is Not a Necessarily Raised Question .... 7

       C.     Exercising Jurisdiction on Any Basis Will Disrupt the State-Federal Balance ...... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Broder v. Cablevision Systems Corp.*,
  418 F.3d 187 (2d Cir. 2005) ........................................................................ 5, 8

*City of New York v. Fedex Ground Package System, Inc.*,
  314 F.R.D. 348 (S.D.N.Y. 2016) ...................................................................... 4

*City of Rome v. Verizon Commc'ns, Inc.*,
  362 F.3d 168 (2d Cir. 2004) .............................................................................. 8

*Fantastic Enters., Inc. v. S.M.R. Enters., Inc.*,
  143 Misc.2d 124 (N.Y. Sup. Ct. 1988) ............................................................. 3

*Grable & Sons Metal Prods., Inc. v. Darue Engineering*,
  545 U.S. 308 (2005) ........................................................................................... 8

*Gunn v. Minton*,
  568 U.S 251 (2013) ............................................................................................ 7

*In re Lehman Bros. Secs. & ERISA Litig.*,
  No. 09 M.D. 2017, 2012 WL 983561 (S.D.N.Y. Mar. 22, 2012) ...................... 4

*Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
  824 F.3d 308 (2d Cir. 2016) .............................................................................. 9

*Link Motion Inc. v. DLA Piper LLP*,
  103 F.4th 905 (2d Cir. 2024) ............................................................................ 9

*Mid Atlantic Medical Services, LLC v. Sereboff*,
  407 F.3d 212 (4th Cir. 2005) ............................................................................ 4

*Mims v. Arrow Financial Services, LLC*,
  565 U.S. 368 (2012) .......................................................................................... 4

*New York v. Shinnecock Indian Nation*,
  686 F.3d 133 (2d Cir. 2012) .............................................................................. 8

*Palmieri v. Lynch*,
  392 F.3d 73 (2d Cir. 2004) ............................................................................... 6

*People v. Am. Motor Club*,
  179 A.D.2d 277 (N.Y. App. Div. 1992) ........................................................... 2

*People v. Apple Health & Sports Clubs*,
  206 A.D.2d 266 (N.Y. App. Div. 1994) ........................................................... 2

*People v. Citibank, N.A.*,
    763 F. Supp.3d 496 (S.D.N.Y. 2025)................................................................ 2

*People v. Dell, Inc.*,
    514 F. Supp. 2d 397 (N.D.N.Y. 2007)............................................................. 4

*People v. First Am. Corp.*,
    No. 07 Civ. 10397, 2008 WL 2676618 (S.D.N.Y. Jul. 8, 2008) .................... 3

*People v. Frink Am., Inc.*,
    2 A.D.3d 1379 (N.Y. App. Div. 2003) .......................................................... 3n

*People v. Greenberg*,
    21 N.Y.3d 439 (2013) ..................................................................................... 2

*People v. Image Plastic Surgery, LLC*,
    210 A.D.3d 444 (N.Y. App. Div. 2022) .......................................................... 2

*People v. JUUL Labs, Inc.*,
    212 A.D.3d 414 (N.Y. App. Div. 2023) .......................................................... 2

*People v. Northern Leasing Systems, Inc.*,
    169 A.D.3d 527 (N.Y. App. Div. 2019) .......................................................... 2

*People v. Sirius XM Radio Inc.*,
    735 F. Supp. 3d 272 (S.D.N.Y. 2024).................................................... 3, 9, 10

*People v. Trump Entrepreneur Initiative LLC*,
    137 A.D.3d 409 (N.Y. App. Div. 2016) ...................................................... 2, 3

*People v. Veleanu*,
    89 A.D.3d 950 (N.Y. App. Div. 2011) ............................................................ 4

*People v. World Interactive Gaming Corp.*,
    185 Misc. 2d 852 (N.Y. Sup. Ct. 1999) .......................................................... 2

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020).............................................................. 8

*State v. Arm or Ally, LLC*,
    718 F. Supp. 3d 310 (S.D.N.Y. 2024).............................................................. 3

*State v. Citibank, N.A.*,
    537 F. Supp. 1192 (S.D.N.Y. 1982)................................................................. 2

*State v. Cortelle Corp.*,
    38 N.Y.2d 83 (1975) ....................................................................................... 3

*State v. Exxon Mobile Corp.*,
    83 F.4th 122 (2d Cir. 2023) ............................................................... 5, 7, 8

*Vestron, Inc. v. Home Box Office, Inc.*,
    839 F.2d 1380 (9th Cir. 1988) ............................................................... 4

**STATUTES**

12 U.S.C. § 5481 ............................................................................................ 6

12 U.S.C. § 5531 ............................................................................................ 6

12 U.S.C. § 5552 ......................................................................................... 1, 6

28 U.S.C. § 1331 ............................................................................................ 5

28 U.S.C. § 1338 ............................................................................................ 5

29 U.S.C. § 1132 ............................................................................................ 4

47 U.S.C. § 227 ............................................................................................. 4

N.Y. Executive Law § 63 ......................................................................... *passim*

N.Y. GBL § 349 ......................................................................................... 4, 5

**INTRODUCTION**

The OAG's motion to remand (the "Motion") rests on a simple premise: this action is brought by New York in a New York court, asserts New York claims to stop novel violations of New York's consumer protections, and does so in a manner authorized by Congress. MoneyLion's opposition (the "Opposition") disproves none of the above but insists that this is a federal action. That is untrue under settled precedent, and any incidental federal questions—which are neither necessarily raised nor substantial—are insufficient bases upon which to interfere with the role of New York courts in overseeing this action. Remand therefore should be ordered.

**ARGUMENT**

**I.    THE COMPLAINT ASSERTS CLAIMS CREATED BY NEW YORK LAW THAT CANNOT BE TRANSFORMED INTO REMOVABLE FEDERAL CLAIMS**

The Complaint asserts seven causes of action created by Executive Law § 63(12), a statute that has for decades authorized the OAG to bring civil actions for fraudulent or illegal conduct, including violations of federal law. (Mem. 9–10.) State claims such as these are not removable, subject to exceptions such as the *Gunn/Grable* substantial question test. (Mem. 7–8.)

MoneyLion, however, contends that two of the claims are created by the CFPA because that law "creates a private right of action and furnishes the substantive rules of decision." (Opp. 7.) But that simply is not true. While the CFPA creates a cause of action for attorneys general, 12 U.S.C. § 5552(a)(1), the OAG's Complaint does not invoke it. (*See* AC ¶¶ 160–79.) And here, the OAG's Section 63(12) claims supply their own substantive rules of decision—including that the OAG must prove repeated and persistent conduct, which are not elements of any CFPA claim, and a distinct statute of limitations (Mem. 10)—all of which the Opposition ignores.

MoneyLion also argues that Executive Law § 63(12) "lacks independent substantive force" and is merely "procedural and remedial" (Opp. 9), but that cannot be squared with the law's

provision of a substantive fraud claim, independent of predicate illegality. Unlike common-law fraud, Section 63(12) fraud claims can be "based on unconscionable contract terms." *People v. Northern Leasing Systems, Inc.*, 169 A.D.3d 527, 530 (N.Y. App. Div. 2019). Similarly, the OAG can prove Section 63(12) fraud claims without the common-law elements of reliance or scienter. *People v. Apple Health & Sports Clubs*, 206 A.D.2d 266, 267 (N.Y. App. Div. 1994).

Overwhelming precedent holds that New York law creates the OAG's claims. The Court of Appeals described Executive Law § 63(12) as a "broadly worded anti-fraud provision." *People v. Greenberg*, 21 N.Y.3d 439, 446 (2013). It has been squarely held that "the Attorney General is, in fact, authorized to bring a cause of action for fraud under Executive Law § 63(12)." *People v. Trump Entrepreneur Initiative LLC*, 137 A.D.3d 409, 418 (N.Y. App. Div. 2016). It also has been held that claims for illegality and fraud under Executive Law § 63(12) are independent causes of action and "not duplicative." *People v. Am. Motor Club*, 179 A.D.2d 277, 282–83 (N.Y. App. Div. 1992). And numerous decisions describe "claims" or "causes of action" created by Section 63(12), even those that are premised on violations of federal law. *See People v. JUUL Labs, Inc.*, 212 A.D.3d 414, 415 (N.Y. App. Div. 2023) (claims "pursuant to Executive Law § 63(12)" for "illegal conduct" in violation of the FTC Act); *People v. Image Plastic Surgery, LLC*, 210 A.D.3d 444, 444 (N.Y. App. Div. 2022) ("causes of action under . . . Executive Law § 63(12)"); *People v. World Interactive Gaming Corp.*, 185 Misc. 2d 852, 856 (N.Y. Sup. Ct. 1999) ("Any conduct which violates State or Federal law or regulation is actionable under [Section 63(12)].").

Federal courts have held the same. One early opinion shortly after enactment described the OAG's Executive Law § 63(12) claim for violations of a federal law a "cause of action ***created by the State***." *State v. Citibank, N.A.*, 537 F. Supp. 1192, 1195 (S.D.N.Y. 1982) (emphasis added). Other courts have uniformly agreed. *See People v. Citibank, N.A.*, 763 F. Supp.3d 496, 535

2

(S.D.N.Y. 2025) (the OAG may "assert a cause of action under Section 63(12)"); *State v. Arm or Ally, LLC*, 718 F. Supp. 3d 310, 320 (S.D.N.Y. 2024) (noting that the OAG's plenary "counts are brought both as part of the State's Section 63(12) claim and as standalone claims").

Against this weight of precedent, MoneyLion takes out of context a statement by the Court of Appeals that Section 63(12) "creates no new claims but only provides particular remedies and standing." (Opp. 9.) But this omits the quote's opening clause: "***As applied to the allegations in this case,***" *State v. Cortelle Corp.*, 38 N.Y.2d 83, 86 (1975) (emphasis added). *Cortelle* concerned whether a three- or six-year limitations period applied to the OAG's Section 63(12) fraud claim— an issue that turned on whether that claim sought redress "for wrongs" not previously "recognized in the common or decisional law." *Id*. The quoted language is merely the conclusion that, ***as pled in that case***, the OAG's claim did not address a "new" wrong but rather a "rather old and common type of fraud." *Id*. In other words, *Cortelle* does not speak at all to "whether § 63(12) provides for an independent cause of action." *See Trump*, 137 A.D.3d at 416 (*Cortelle* "was directed to a specific issue—that is, whether the [OAG] was pursuing a claim that existed only under § 63(12)" or a claim that was "essentially to a common-law claim of promissory fraud"); *Fantastic Enters., Inc. v. S.M.R. Enters., Inc.*, 143 Misc.2d 124, 128 (N.Y. Sup. Ct. 1988) (*Cortelle* "found that the alleged fraudulent acts" were "actionable wrongs prior to the enactment of the statutes").[1]

No court has ever sustained removal on the Opposition's theory. To the contrary, in *People v. Sirius XM Radio Inc.*, the district court remanded a Section 63(12) claim premised on violations of federal law, holding that the claim "originate[d] under New York State law." 735 F. Supp. 3d 272, 276 (S.D.N.Y. 2024). Others have done the same. *See, e.g.*, *People v. First Am. Corp.*, No.

---

[1] The Opposition's other authority, *People v. Frink Am., Inc.*, 2 A.D.3d 1379 (N.Y. App. Div. 2003), is unpersuasive. It merely requotes in dicta the language from *Cortelle* without analysis and has never been cited by an appellate court for the proposition put forth in the Opposition.

07 Civ. 10397, 2008 WL 2676618, at *2–3 (S.D.N.Y. Jul. 8, 2008) (remanding OAG claims premised on federal appraisal standards); *People v. Dell, Inc.*, 514 F. Supp. 2d 397, 400 (N.D.N.Y. 2007) (remanding OAG claims premised on "violations of federal law"); *cf. In re Lehman Bros. Secs. & ERISA Litig.*, No. 09 M.D. 2017, 2012 WL 983561, at *3–4 (S.D.N.Y. Mar. 22, 2012) (remanding OAG claim premised on failure to follow federal accounting rules).

The Complaint's references to CFPA penalty provisions does not alter the analysis. As an initial matter, the primary relief sought by the OAG is injunctive, restitution, disgorgement, and penalties under New York's GBL § 349—all arising out of state law. An incidental demand for penalties "as appropriate" under the CFPA does not convert this action into one created by federal law, as the Court of Appeals has repeatedly affirmed penalty awards in cases involving standalone Section 63(12) claims such as those here. (Mem. 10); *see also People v. Veleanu*, 89 A.D.3d 950, 951 (N.Y. App. Div. 2011) (same). This is because, as one district court explained, if the underlying statute being violated authorizes penalties, then "the AG can seek penalties available under both § 63(12) *and* the underlying statute being enforced." *City of New York v. Fedex Ground Package System, Inc.*, 314 F.R.D. 348, 362 (S.D.N.Y. 2016) (emphasis in original).

Nothing cited in the Opposition remotely supports the argument that MoneyLion mounts here. *Mims v. Arrow Financial Services, LLC* merely held that jurisdiction exists if federal law "creates a private right of action," 565 U.S. 368, 378–79 (2012), such as the federal TCPA at issue in that case, 47 U.S.C. § 227(b)(3). Similarly, the complaint in *Mid Atlantic Medical Services, LLC v. Sereboff*, 407 F.3d 212 (4th Cir. 2005) expressly invokes a federal ERISA provision creating a private right to bring civil actions, 29 U.S.C. § 1132(a)(3). (*See* Verified Complaint ¶ 21, No. 03 Civ. 2269, ECF No. 1 (D. Md. Aug. 5, 2003).) Finally, the decision in *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380 (9th Cir. 1988) analyzes jurisdiction under the exclusive federal

4

copyright jurisdiction statute, 28 U.S.C. § 1338, which is inapplicable here. MoneyLion does not and cannot identify a single case in which a claim **created by state law** has been held, under 28 U.S.C. § 1331, to in fact be a federal-law claim. Given that the removal statute is to be narrowly construed (Mem. 7), the Court should decline to adopt MoneyLion's novel argument.

Indeed, that argument runs contrary to binding precedent. In *State v. Exxon Mobile Corp.*, the Second Circuit refused to "look beyond the plaintiff's characterization of its claims" even if "the plaintiff is attempting to avoid federal jurisdiction by framing its claims in terms of state law," 83 F.4th 122, 133 (2d Cir. 2023)—precisely what the Opposition asks the Court to do here (*see* Opp. 9 (accusing the OAG of "evad[ing]" federal jurisdiction)). While MoneyLion correctly notes that the claims in *Exxon* did not refer to federal law, the enunciated legal principle still controls: the OAG is the "master of the claim" and may "avoid federal jurisdiction" by "not affirmatively alleg[ing] a federal claim." *Exxon*, 83 F.4th at 132. In *Broder v. Cablevision Systems Corp.*, too, the Second Circuit held that a New York GBL § 349 claim was a state-law claim and assessed removal solely under the *Gunn/Grable* test, despite that claim being premised on violations of federal law that needed to be proven to obtain relief. 418 F.3d 187, 194–95 (2d Cir. 2005). The same should hold here—and as shown below, removal is unwarranted under that test.

## II.    MONEYLION FAILS TO CARRY ITS BURDEN TO SUSTAIN REMOVAL

To remove, MoneyLion must identify a federal question that satisfies each element of the *Gunn/Grable* test. The Opposition identifies no single question that is necessarily raised, disputed, and substantial, nor can it show that removal will not disrupt the state-federal balance.

### A.    The Question of MoneyLion's Liability under the CFPA Does Not Involve a Federal Question That is Necessarily Raised, Substantial, and Disputed

The Motion showed that federal questions necessarily raised here—specifically, whether MoneyLion acted deceptively or abusively—are not substantial. For deception, whether the

Company's "no interest" and "0% APR" ads are deceptive does not depend on federal law, but on whether its Paycheck Advances and fees are loans and interest under New York law. (Mem. 17–18.) For abusiveness, application of the statutory standard to the facts is the sort of issue that courts routinely hold to be not substantial (Mem. 18–19), as MoneyLion itself concedes (*see* Opp. 21 (conceding that "many" removals based on "fact bound" disputes will be remanded)).

MoneyLion's Opposition does not engage directly with these points, respond to the cited authority, or contend that these disputes are substantial questions, thus conceding that they are not.[2] *See Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (argument is "waived" when not raised in briefing). The Opposition instead advances a new argument: The OAG must show that MoneyLion is a "covered person" under the CFPA and thus must show that its Paycheck Advances are "credit" under federal law. (Opp. 15–18.) This argument fails for two reasons:

*First*, while the OAG must show that MoneyLion is a "covered person" under the CFPA, 12 U.S.C. §§ 5531, 5552, it does not follow that the OAG must establish that Paycheck Advances are "credit." The CFPA defines a "covered person" as any person offering a "consumer financial product or service," *id*. § 5481(6)(A), which in turn is defined through a list of qualifying products or services, *id*. § 5481(15)(A). While "extending credit," is among the qualifying services, so are (i) "transmitting . . . funds," (ii) providing "payment instruments," and (iii) "providing payments" to consumers "by any technological means." *Id*. § 5481(15)(A)(i)–(vii). Satisfying any one of these will do; the OAG need not specifically establish that Paycheck Advances are credit, and thus that

---

[2]    MoneyLion's does cite to a statement in an OAG brief in a different context that "analysis of consumer 'credit' under the CFPA, TILA, and EFTA 'did *not* involve an application of New York law'" (Opp. 18), but that citation is off point. That quote merely described a lawsuit brought by the Consumer Financial Protection Bureau under those federal laws, *CFPB v. Snap Financial LLC*, which naturally did not concern New York law. (Opp. Ex. 1, at 29.) It has no relevance to whether MoneyLion deceived New Yorkers by promising interest free loans while providing Paycheck Advances that charged interest under New York law. (Mem. 17–18.)

issue is not necessarily raised. *See Exxon*, 83 F.4th at 140 ("if a court could resolve the case without reaching the federal issue, then the claims do not necessarily raise a federal issue").

*Second*, the first-order issue that *is* necessarily raised—whether MoneyLion is a "covered person"—is neither substantial nor actually in dispute. The Complaint alleges facts showing that MoneyLion transmits funds to consumers (AC ¶¶ 4, 96), offers payment instruments such as bank accounts (AC ¶ 21), and makes payments to consumers via technological means (AC ¶ 23). Similarly, in its own pleadings MoneyLion asserts facts sufficient to establish itself as a covered person. (*See* Notice ¶ 1 (describing "Instacash" as a product that "gives consumers early access to money").) Indeed, in moving to dismiss an action brought by the CFPB, MoneyLion did not even attempt to argue that it is not a covered person. *See* Memorandum of Law, *CFPB v. MoneyLion Technologies Inc.*, No. 22 Civ. 8308 (S.D.N.Y.), ECF No. 58 (Jan. 10, 2023). There simply is no substantial question in dispute that MoneyLion is a covered person under the CFPA.

**B.    The OAG's Authority to Seek Penalties is Not a Necessarily Raised Question**

MoneyLion's argument that the OAG's demand for penalties warrants removal (Opp. 13) also fails. For one, remedial questions are inherently contingent and MoneyLion's argument is at most an affirmative defense. (Mem. 11–14.) And here, remedies for Section 63(12) violations are inherently *state law* questions that do not give rise to federal jurisdiction. (Mem. 13.)

The Opposition ignores these points, instead contending that courts must account for every question on which a plaintiff must "prevail." (Opp. 13 n.8.) Thus, the argument goes, because the OAG must prove that it may obtain penalties under the CFPA to "prevail" on its demand, that issue is necessarily raised. But this requirement appears nowhere in the Supreme Court's articulation of the substantial question test: "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution" without disrupting the state-federal balance. *Gunn v.*

*Minton*, 568 U.S 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Engineering*, 545 U.S. 308 (2005) (no discussion of issues on which a plaintiff must "prevail").

The Second Circuit likewise has imposed no such requirement. To the contrary, *New York v. Shinnecock Indian Nation* held that federal questions implicated by state-law claims were not necessarily raised because the ***defendant*** could prevail by establishing "that their construction of the casino complied with state and local law," thereby resolving the matter "without reference to federal law." 686 F.3d 133, 140–41 & n.5 (2d Cir. 2012). In short, if the state court can "resolve the case without reaching the federal issues, then the claims do not necessarily raise a federal issue." *Exxon*, 83 F.4th at 140 (quotations omitted); *see Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414 (S.D.N.Y. 2020) ("The Supreme Court, the Second Circuit, and other federal courts all agree that plaintiffs 'necessarily raise' federal issues only if adjudication of their state-law claims require a reviewing court at some point to apply a federal rule of decision.").

*Broder* is not to the contrary. MoneyLion quotes language from that opinion stating that whether a question is necessarily raised is not affected "by the many 'alternative ways in which a claim could fail.'" (Opp. 13 n.8 (quoting *Broder*, 418 F.3d at 187).) But the Second Circuit was merely describing the facts of a Supreme Court case, not announcing a new legal principle. *See id*. at 195–96. The OAG is aware of no case, and the Opposition identifies none, that has cited this language or adopted the formulation of necessarily raised that MoneyLion urges here.

Finally, even accepting MoneyLion's argument, necessarily raised questions are those that speak to ***liability***. (Mem. 12–13); *see Exxon*, 83 F.4th at 141 ("necessary" issues are those that "must be proven to establish [a defendant]'s liability"); *City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 176 (2d Cir. 2004) (question must be a "necessary element" of a claim). This makes sense, as it is impossible for a contingent issue such remedies to ever be ***necessarily*** raised, which

is the relevant standard. MoneyLion cites no federal court that ever has asserted jurisdiction over state-law claims based on federal remedial questions; this Court should not be the first.

### C.    Exercising Jurisdiction on Any Basis Will Disrupt the State-Federal Balance

The OAG in this action has substantial interest in proceeding in state court to vindicate state consumer protections. (Mem. 18–21); *see Sirius*, 735 F. Supp. 3d at 282 ("seeking relief on behalf of all aggrieved customers based on conduct that is occurring in New York is part and parcel of the State's sovereign interest"). This "special state interest" must be accounted for when assessing the disruption to the "balance of state and federal responsibilities" caused by sustaining removal. *Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016).

MoneyLion, however, ignores New York's interests, focusing instead on supposed federal interests at stake. But "the established federal-state balance expects" that cases concerning areas of traditional state regulation will "be heard in state court." *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 916 (2d Cir. 2024). This is such a case: the OAG's Section 63(12) claims are New York claims, many of which invoke longstanding usury prohibitions of vital importance to New York, and which are brought by New York to protect New Yorkers. (Mem. 21–22.)

Rather than engage with New York's paramount interests, MoneyLion argues that the OAG "invoked the CFPA" and thus somehow flipped the equation, prioritizing federal interests over those of New York. (Mem. 21.) But its identified federal question—the meaning of "credit" under the CFPA and federal law (Opp. 19–20)—is not necessarily raised. *See supra* 5–7. MoneyLion's argument, moreover, effectively eliminates the final *Gunn/Grable* factor entirely. As courts have held, "the presence of a disputed federal issue and the ostensible importance of the federal forum ***are never necessarily dispositive***"; in other words, the purpose of this final element is to assess the "disruptive portent in exercising federal jurisdiction" ***regardless*** of the presence of a federal question. (Mem. 21 (collecting cases).) Here, removal will deprive New York courts of their proper

role in applying New York law to ongoing evasion by an emerging, exploitative industry in favor of a federal forum for which Congress stated no preference. Nothing supports this result.

MoneyLion also argues that the "traditional forum" for an action involving federal law is a federal court. (Opp. 19) But that's not even true in this case; the ***sole*** federal law invoked in the Complaint, the CFPA, makes expressly clear—as the Opposition admits (Opp. 20)—that the OAG was authorized by Congress to bring this action in a New York court (Mem. 21–22).

The remand in *Sirius* is instructive. MoneyLion argues that the *Sirius* Court "specifically emphasized" the OAG's use of a special proceeding and thus its decision "does not support" the OAG here. (Opp. 20.) The OAG's use of a special proceeding, however, was one of ***many factors*** that the *Sirius* Court considered, ***all of which*** also are present here and ***all of which*** favored remand. 735 F. Supp. 3d at 280–81. In particular, the *Sirius* Court assessed the "balance between state and federal courts that Congress set forth," finding that the federal law at issue in that case preserved "any powers [that] Attorneys General have under state law to bring related state causes of action in state court." 735 F. Supp. 3d at 281. Here, too, the CFPA preserves the OAG's right to enforce the CFPA in New York courts. (Mem. 21; Opp. 20.) It thus is "inconsistent with the division of responsibilities that Congress set forth" to remove. 735 F. Supp. 3d at 281.

## **CONCLUSION**

The OAG thus respectfully requests that the Court remand this action.

Dated: July 30, 2025                      Respectfully submitted,

                                          LETITIA JAMES
                                          Attorney General of the State of New York

                                          By:  */s/ Christopher L. Filburn*
                                          Christopher L. Filburn
                                          *Senior Enforcement Counsel*
                                          Bureau of Consumer Frauds & Protection
                                          28 Liberty Street, 20th Floor
                                          New York, New York 10005
                                          Tel.: 212.416.8303
                                          Email: christopher.filburn@ag.ny.gov

                                          Of counsel:

                                          Jane M. Azia
                                          *Bureau Chief*

                                          Laura J. Levine
                                          *Deputy Bureau Chief*

                                          *Counsel for Plaintiff*
                                          *People of the State of New York*

**CERTIFICATION**

CHRISTOPHER L. FILBURN, an attorney duly admitted in the State of New York and authorized to practice before this Court, certifies under Local Civil Rule 7.1(c) as follows:

1.      I am a Senior Enforcement Counsel assigned to the New York State Office of the Attorney General's Bureau of Consumer Frauds and Protection.

2.      The foregoing Reply Memorandum of Law complies with the word count limit set forth in Local Civil Rule 7.1(c) in that it contains, exclusive of caption, index, and signature blocks, 3,489 words, according to the word count function of the word-processing program used to prepare it.

Dated: July 30, 2025                                     _/s/ Christopher L. Filburn_
       New York, New York                              Christopher L. Filburn